IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| DIANA G. OAKLEY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 3:09-CV-127 |
| ) | |
| OAKMONT RESORT CONDOMINIUM ) | |
| ASSOCIATION, INC., ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM

Plaintiff was employed by defendant Oakmont Resort Condominium Association, Inc., a timeshare facility, from March 1990 until her July 2, 2008 termination. Plaintiff contends that she was fired in retaliation for giving testimony in a prior civil rights lawsuit and for participating in a Department of Labor audit. Plaintiff argues that defendant's allegedly retaliatory conduct violates the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, *et seq.*, the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.*, the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, and the Tennessee Human Rights Act ("THRA"), T.C.A. § 4-21-101, *et seq.*

Now before the court is defendant's motion for summary judgment [doc. 16]. Plaintiff has filed a response, to which defendant has submitted a reply.[1] The court finds oral

---

[1] Also before the court is "Plaintiff's Motion for Leave to File a Supplemental Memorandum in Opposition to Defendant's Motion for Summary Judgment" [doc. 26] which will be granted for
(continued...)

argument unnecessary. For the reasons that follow, defendant's motion will be granted and this civil action will be dismissed.

I.

*Summary Judgment Standard*

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party may discharge its burden by demonstrating that its opponent has failed to establish an essential element of that party's case for which it bears the ultimate burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

After the moving party has carried its initial burden of showing that there are no genuine issues of material fact in dispute, the burden shifts to the non-moving party to present specific facts demonstrating a genuine issue for trial. *Matsushita Elec. Indus. Co., v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). In order to defeat a motion for summary judgment, the non-moving party must present significantly probative evidence in support of its complaint. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986). The non-movant's evidence is to be believed, and all justifiable inferences are to be drawn in that party's favor. *Id.* at 255. The court determines whether the evidence requires submission

---

[1](...continued)
the reasons offered therein. The court has considered plaintiff's supplemental memorandum, which was submitted as an attachment to the motion.

to a jury or whether one party must prevail as a matter of law, but at summary judgment it is not the court's role to weigh evidence or to determine credibility. *Id.*

"It is well settled that the non-moving party must cite specific portions of the record in opposition to a motion for summary judgment, and that the court is not required to search the record for some piece of evidence which might stave off summary judgment." *U.S. Structures, Inc. v. J.P. Structures, Inc.*, 130 F.3d 1185, 1191 (6th Cir. 1997). A party responding to a summary judgment motion "*must . . .* set out *specific facts* showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2) (emphasis added).

II.

*Facts*

Plaintiff worked as defendant's activities director at the time of her termination. In 2005, an employment discrimination complaint was filed in this court by another former employee of defendant. *See Roe v. Oakmont Resort Condominium Ass'n*, No. 3:05-CV-538 (E.D. Tenn.). In July 2006, plaintiff and her ex-husband each gave deposition testimony in the *Roe* case that was inconsistent with the positions of defendant's then-general manager David Lynch and defendant's Chief Operating Officer Herbert Moore.[2] Less than three months after those depositions, defendant settled the *Roe* litigation.

Plaintiff and her ex-husband both allege "a coldness and a standoffishness" from Moore toward both of them since their *Roe* depositions. According to plaintiff, "he

---

[2] Plaintiff's ex-husband, Danny Oakley, works as defendant's maintenance manager.

3

would still speak. He would still say hello or good morning, but that was about it. And if I did try to talk with him, I felt like he was like giving me the cold shoulder. I just wasn't comfortable around him." Mr. Oakley testified that Moore, "because of the Ken Roe case, had it out for both of us [him and plaintiff]. He tried several times catching me doing something and he wasn't – didn't." Mr. Oakley testified that both he and plaintiff thought that Moore was "after them" because of their *Roe* testimony, but admitted that was just an assumption on his part. Plaintiff described Moore's slights as "just, you know, a lot of little things." However, subsequent to her *Roe* testimony, plaintiff received at least two positive performance evaluations and at least three pay raises.

In November 2006, an attorney conducted an employment law seminar for defendant's management staff. A handout was provided by the attorney listing concerns to keep in mind when hiring or terminating an employee. Plaintiff testified that she and her ex-husband "assumed" that the contents of the document were company policy.[3] Plaintiff herself did not refer to the document when interviewing prospective employees, and Mr. Oakley admittedly did not refer to the document when terminating employees. Neither plaintiff nor Mr. Oakley has any personal knowledge of whether defendant ever referred to or followed these guidelines in terminating anyone.

---

[3] Although not material to the court's ruling this date, it is observed that plaintiff refers to the handout in her briefing, quotes from it at length, and cites it as exhibit 3 to Mr. Oakley's deposition. [Doc. 24, p. 14-15]. She did not, however, make the handout a part of the record now before the court.

Defendant was audited by the Department of Labor in August 2007. Plaintiff was among an apparently random list of workers selected by the investigators to be interviewed.[4] Plaintiff was asked whether she worked more than 40 hours per week in her then-salaried position, to which she answered in the affirmative. Plaintiff provided the investigator with a record of her hours worked. As a result of the investigation, plaintiff's job was reclassified as non-exempt, and she received a check for approximately $700.

Plaintiff testified that she "felt like [Moore] was upset and mad" at a subsequent meeting in her office. Moore "sort of sarcastically" said, in reference to the $700 check, that plaintiff was going to have a "really good Christmas." In October 2007, plaintiff states that Moore "came down, and he just sort of not really slammed but not very gently put a paper on my desk and said, 'Sign this if you want your check.' . . . So I signed it and he gave me my check and left."

Plaintiff states that Moore's "coldness" and "abruptness" intensified after the Department of Labor audit. When asked at her deposition to explain, plaintiff stated, "Well, someone can say hi to you. But if they're mad or upset with you, it's just their tone of voice, and you can tell that they're not pleased to be around you. So it's hard to describe."

Defendant's 2006 employee handbook contains a "representative, but not exclusive, list of the types of misconduct that can result in disciplinary action, up to and including termination." Among the offenses listed is, "Sleeping during work hours." On

---

[4] Plaintiff did not make any complaints prior to or during the investigation, nor did she in any way cause the investigation to occur.

5

April 11, 2008, Moore observed maintenance employee Dieter Sawall asleep on the job. Moore alerted general manager Stephine Gregg by telling her, "We have a sleeper."[5] Gregg then terminated Sawall that day based on the incident.

On July 2, 2008, Moore found plaintiff asleep in her office with her foot propped up "in a chair or maybe a box." Moore immediately located Gregg and told her that "we have another sleeper." The two then returned to the clubhouse. Plaintiff had awoken by that time. According to her deposition testimony, Moore said, "'Diana, have you been sleeping?' And I said no. And then he said, 'Yes, you have. You were sound asleep.' I said, 'No. I dozed off for a minute.'" Moore then stated, in Gregg's presence, "Give me two good reasons why I shouldn't fire you right now. . . . No. Give them to Stephanie. I'm out of here."

Moore left plaintiff's office, and plaintiff recalls telling Gregg that "I had had no breaks and that I was not asleep. I was just dozing." Gregg then terminated plaintiff, stating in full, "I have to do what Herb says. If it was anyone else but Herb . . . ." Moore, however, testified that the decision to terminate plaintiff was made solely by Gregg. Similarly, Gregg testified that she made the termination decision without input from Moore, and she denies referring to Moore when firing plaintiff. Plaintiff testified, "As I've stated before, I believe that Mr. Moore wanted me gone and [the sleeping incident] was the first

---

[5] Spellings of Gregg's first name found in the record include "Stephaine," "Stephine," "Stephanie," "Stephie," and "Steph." The court is utilizing the spelling found on the cover of Gregg's deposition.

time I had ever gave [sic] him anything remotely possible that he could use as an excuse to fire me."

III.

*Analysis*

At summary judgment, the court generally evaluates a discrimination claimant's inferential and circumstantial evidence using the familiar *McDonnell Douglas* burden-shifting approach. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Within the Sixth Circuit, the present claims of retaliation are analyzed under *McDonnell Douglas*. *See Geiger v. Tower Auto.*, 579 F.3d 614, 622 (6th Cir. 2009) (ADEA); *Bryson v. Regis Corp.*, 498 F.3d 561, 577 (6th Cir. 2007) (ADA); *Adair v. Charter County of Wayne*, 452 F.3d 482, 489 (6th Cir. 2006) (FLSA); *Newman v. Fed. Express Corp.*, 266 F.3d 401, 406 (6th Cir. 2001) (THRA).

In *McDonnell Douglas*, the Supreme Court established "the order and allocation of proof in a private, non-class action challenging employment discrimination . . . ." *McDonnell Douglas*, 411 U.S. at 800-03. Under that framework, a plaintiff must first establish a *prima facie* case of discrimination. *Id.* at 802. The elements necessary to make a *prima facie* showing will vary depending on the facts of each case and the type of discrimination alleged. *See Furnco Constr. Corp. v. Waters*, 438 U.S. 567, 575-76 (1978). "The key question is always whether, under the particular facts and context of the case at hand, the plaintiff has presented sufficient evidence that he or she suffered an adverse

employment action under circumstances which give rise to an inference of unlawful discrimination." *Macy v. Hopkins County Sch. Bd. of Educ.*, 484 F.3d 357, 365 (6th Cir. 2007).

Plaintiffs bear the burden of persuasion throughout the entire process. *See Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 793 (6th Cir. 2000). If a plaintiff is able to establish her *prima facie* case, the burden then shifts to the employer to "articulate some legitimate, nondiscriminatory reason" for the adverse employment action. *Id.* at 792-93 (citation omitted). If the employer successfully provides such a reason, *McDonnell Douglas*'s regime then places the final burden on the plaintiff to "demonstrate by competent evidence" that the employer's proffered reason is in fact merely a pretext. *McDonnell Douglas*, 411 U.S. at 805. Pretext may be shown "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981).

To demonstrate a *prima facie* case of retaliation, plaintiff must prove: (1) she engaged in statutorily-protected conduct; (2) the exercise of that protected right was known to defendant; (3) defendant thereafter took adverse employment action against her or subjected her to severe or pervasive retaliatory harassment; and (4) there was a causal connection between the adverse action and the protected activity. *Barrett v. Whirlpool Corp.*, 556 F.3d 502, 516 (6th Cir. 2009). Plaintiff has satisfied the first three elements of her *prima*

8

*facie* case. Her termination was an adverse employment action, and she engaged in protected conduct known to the defendant.[6]

As for the final element of plaintiff's *prima facie* case, in determining whether a causal connection exists the court "may consider whether the employer treated the plaintiff differently from similarly situated individuals and whether there is a temporal connection between the protected activity and the retaliatory action." *Id.* at 517. Despite "tension in Sixth Circuit law on whether proximity alone may *ever* suffice to show causation, there is a consensus that proximity alone generally will not suffice where the adverse action occurs more than a few months . . . after the protected conduct." *Hamilton v. Starcom Mediavest Group*, 522 F.3d 623, 629 (6th Cir. 2008) (emphasis in original).

It is a plaintiff's burden to produce sufficient evidence from which a causal connection can be inferred. *See Singfield v. Akron Metro. Housing Auth.*, 389 F.3d 555, 563 (6th Cir. 2004). The present plaintiff has not met that burden. She has therefore failed to make out a *prima facie* case of retaliation, and her lawsuit must be dismissed.

Temporal proximity is obviously lacking. Plaintiff's termination occurred nearly two years after her *Roe* testimony and 10 to 11 months after the Department of Labor interview. Nor has plaintiff shown that she was treated differently from similarly situated individuals. Less than three months prior to her firing, coworker Dieter Sawall was also terminated by Gregg under strikingly similar circumstances. That Sawall was also terminated

---

[6] Solely for purposes of the instant motion, the court will presume without deciding that plaintiff's participation in the Department of Labor audit constitutes "protected conduct."

9

by Gregg after Moore witnessed him sleeping on the job "strongly negates" plaintiff's claim and "suggests nonretaliation." *See Adair v. Charter County of Wayne*, 452 F.3d 482, 491 (6th Cir. 2006).

Plaintiff cites *Harrison v. Metropolitan Government of Nashville & Davidson County*, 80 F.3d 1107 (6th Cir. 1996), *overruled on other grounds by Jackson v. Quanex Corp.*, 191 F.3d 647, 667 n.6 (6th Cir. 1999), in support of her causal connection argument. In *Harrison*, the Sixth Circuit agreed that the plaintiff had made out a *prima facie* case of retaliation even though as much as fifteen months had passed between the protected activity and the termination. *Id.* at 1119. However, in *Harrison*, there was evidence that a decisionmaker had used a racial epithet and had "made repeated comments that suggested he would not hesitate to run employees out of his department." *Id.* at 1118-19. Further, "the record in [*Harrison*] reveal[ed] an atmosphere in which the plaintiff's activities were scrutinized more carefully than those of comparably situated employees . . . and that the defendants took every opportunity to make his life as an employee unpleasant." *Id.* at 1119.

Plaintiff also relies on *Hamilton v. General Electric Co.*, 556 F.3d 428 (6th Cir. 2009). Hamilton testified that his supervisors "greatly intensified their scrutiny of his work and harassed him" following his filing of an EEOC complaint. *Id.* at 432. The Sixth Circuit concluded that plaintiff's testimony combined with "the temporal proximity of his termination occurring *less than three months after* his EEOC filing [was] sufficient to

10

Case 3:09-cv-00127-RLJ-HBG   Document 28   Filed 01/14/10   Page 10 of 14   PageID #: 619

establish the causal nexus needed to establish a prima facie case." *Id.* at 435-36 (emphasis added).

In addition to a temporal distance far greater than that found in *Hamilton*, the instant plaintiff's proof falls far short of that submitted in either *Hamilton* or *Harrison*. Plaintiff and her ex-husband cite only an interpersonal "coldness" and "abruptness" from Moore which they "assume" is related to protected activity. "Subjective beliefs, without affirmative evidence, are insufficient to establish a claim of retaliation." *Adair*, 452 F.3d at 491. Subjective assessments, personal beliefs, conjecture, and speculation are insufficient to prove a *prima facie* case. *Wade v. Knoxville Utils. Bd.*, 259 F.3d 452, 463 (6th Cir. 2001); *Chappell v. GTE Prods. Corp.*, 803 F.2d 261, 268 (6th Cir. 1986). "[C]onspiratorial theories" fall short of the specific facts required by Federal Rule of Civil Procedure 56. *Mulhall v. Ashcroft*, 287 F.3d 543, 552 (6th Cir. 2002), *citing and quoting Visser v. Packer Eng'g Assocs.*, 924 F.2d 655, 659 (7th Cir. 1991) ("summary judgment was appropriate where the inferences plaintiff sought to draw from evidence were akin to 'flights of fancy, speculations, hunches, intuitions, or rumors about matters remote from [personal] experience.'").

Even if plaintiff had made out a *prima facie* case, defendant has articulated a legitimate nondiscriminatory reason for her firing. Sleeping on the job in violation of company policy is legitimate grounds for termination. *See Bowie v. Advanced Ceramics Corp.*, 72 Fed. App'x 258, 263 (6th Cir. 2003); *Cartwright v. Lockheed Martin Util. Servs.*,

11

40 Fed. App'x 147, 155 (6th Cir. 2002); *Gant. v. Univ. of Mich. Med. Ctr.*, 21 Fed. App'x 435, 436 (6th Cir. 2001).

The burden would then shift back to plaintiff to demonstrate pretext, which she has failed to do. To raise a genuine issue of material fact as to pretext, a plaintiff must show either that (1) the proffered reason had no basis in fact, (2) the proffered reason was insufficient to motivate the defendant's action, or (3) the proffered reason did not actually motivate the defendant's action. *Adair*, 452 F.3d at 491.

Ultimately, plaintiff seeks to attack the integrity of defendant's decision. First, she complains that Gregg did not consult the employment law seminar handout (which, again, has not been made a part of the record) prior to firing her. This issue merits little discussion. Plaintiff and her husband admittedly never consulted that document during hirings or firings, and plaintiff has no evidence that defendant *ever* referred to or followed those guidelines in terminating any employee.

Plaintiff also cites the discrepancy between Gregg's and Moore's testimony regarding the extent to which Moore was involved in the termination decision. It is undisputed that, soon after having found plaintiff asleep, Moore stated in Gregg's presence, "Give me two good reasons why I shouldn't fire you right now. . . . No. Give them to Stephanie. I'm out of here." As noted above, plaintiff states that Gregg then told her, "I have to do what Herb says. If it was anyone else but Herb . . . ." Gregg and Moore have testified, however, that the ultimate firing decision was Gregg's.

12

There is no dispute as to Moore's involvement in the confrontation that led to plaintiff's dismissal. Any discrepancy regarding whether Gregg or Moore was the ultimate decisionmaker is thus simply not a *material* disputed fact. Plaintiff was fired after being found asleep by defendant's Chief Operating Officer, as was Dieter Sawall a mere three months prior. *See Adair*, 452 F.3d at 491 ("Proof that similarly situated nonprotestors were disciplined just as harshly for the same infraction suggests nonretaliation.") (citation omitted). The facts of the instant case fall short of those cited by plaintiff. *See Coburn v. Rockwell Automation, Inc.*, 238 Fed. App'x 112, 119-22 (6th Cir. 2007) (conflicting testimony regarding whether plaintiff was recommended for dismissal by a manager who had expressed his intent to "go after the group of [older workers]"); *Boles v. Polyloom Corp.*, 459 F. Supp. 2d 647, 654-55 (E.D. Tenn. 2006) (conflicting testimony regarding whether a manager was involved in the termination decision who had stated that the corporation could not afford the plaintiff's medical expenses). In the present case, there is no dispute that Moore was *involved in* plaintiff's firing, and objective evidence of his discriminatory animus is lacking.

Irrespective of the semantic distinction plaintiff endeavors to make between "sleeping" and "dozing," she has not raised a genuine issue of material fact questioning defendant's good faith belief that she was in fact asleep. *See, e.g., Smith v. Chrysler Corp.*, 155 F.3d 799, 807 (6th Cir. 1998); *Bowie*, 72 Fed. App'x at 263. "Sleeping during work hours" is among the potentially terminable offenses listed in defendant's employee

13

handbook, and plaintiff is not the only employee to have been fired by defendant under similar circumstances.

A claimant may not establish pretext merely by questioning the soundness of his employer's personnel decisions. *See Wilkins v. Easton Corp.*, 790 F.2d 515, 521 (6th Cir. 1986). Courts should refrain from sitting as a "super-personnel department" second-guessing employers' business judgment. *See Smith v. Leggett Wire Co.*, 220 F.3d 752, 763 (6th Cir. 2000), *quoting Krenik v. County of Le Sueur*, 47 F.3d 953, 960 (8th Cir. 1995).

Because plaintiff has not made out a *prima facie* case of retaliation, and because plaintiff has not raised a genuine issue of material fact as to pretext, defendant's summary judgment motion must be granted and this civil action must be dismissed. An order consistent with this opinion will be entered.

ENTER:

       s/ Leon Jordan    
United States District Judge